UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENDURANCE AMERICAN INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| ATLANTIC HOUSING MANAGEMENT, LLC and AHF STONE CREEK, LLC, | § § § § | |
| Intervenor Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-0133-B |
| LLOYD'S SYNDICATE 3624, | § § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Endurance American Insurance Company ("Endurance")'s Motion for Partial Summary Judgment (Doc. 50), Defendant Lloyd's Syndicate 3624 ("Hiscox")'s Motion for Partial Summary Judgment (Doc. 53), and Hiscox's Motion for Leave to File an Amended Answer (Doc. 61). For the following reasons, the Court **DENIES** Endurance's Motion for Summary Judgment (Doc. 50), **DENIES** Hiscox's Motion for Summary Judgment (Doc. 53), and **DENIES** Hiscox's Motion for Leave to File an Amended Answer (Doc. 61).

## I.

## BACKGROUND

This case is about whether an insurance company acted reasonably when defending its insured in a previous lawsuit. Intervenor Plaintiff Atlantic Housing Management, LLC ("Atlantic")

managed a property where an individual was severely injured.[1] *See* Doc. 59, Pl.'s Resp. App'x, 9. Atlantic had two insurance policies on this property—it had a primary insurance policy with Hiscox and an excess insurance policy with Endurance. Doc. 52, Pl.'s App'x, 2, 56, 68. The primary insurance policy with Hiscox had a policy limit of $1,000,000 per incident, and Hiscox additionally agreed to make the following supplementary payments:

> 5. court costs taxed against you in the claim; however, costs do not include attorney fees or expenses;
> 6. prejudgment interest awarded against you on that part of any judgment we pay. If we make an offer to pay the applicable limit, we will not pay any prejudgment interest based on the period of time after the offer; and
> 7. interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in the court the part of the judgment that is within the applicable limit.

*Id.* at 3, 14–15 (emphasis omitted). Atlantic's excess insurance policy with Endurance covered any damages Atlantic incurred that exceeded the limits of its primary insurance policy. *Id.* at 68, 72.

A resident of Atlantic's property ("resident-plaintiff") was electrocuted and filed suit against Atlantic in state court in Dallas County. Doc. 59, Pl.'s Resp. App'x, 6–7. As Atlantic's primary insurer, Hiscox had a duty to defend Atlantic in the underlying lawsuit. *See* Doc. 52, Pl.'s App'x, 14. Hiscox's defense counsel engaged in numerous settlement discussions with the resident-plaintiff's counsel throughout the underlying litigation. Doc. 55, Def.'s App'x, 265–66. The resident-plaintiff first offered to settle the suit for $3,000,000 on April 6, 2020. *Id.* at 265, 273. On July 29, 2020, the resident-plaintiff's attorney offered to settle the case for $1,000,000, which was the full value of the Hiscox insurance policy. *Id.* at 265–66, 313–14. This second settlement offer expired on September 14, 2020. *Id.* at 314. However, less than a week after making the settlement offer, the resident-

---

[1] Atlantic and Hiscox settled at mediation. Doc. 54, Def.'s Br. Mot. Summ. J., 13.

plaintiff's counsel indicated that the resident-plaintiff would settle for less than $1,000,000. *Id.* at 265.

On a phone call on March 31, 2021, resident-plaintiff's counsel said that the resident-plaintiff's "real number" was $500,000. *Id.* at 266, 391. In response to this phone call, the Hiscox insurance adjuster managing the underlying litigation added the following note to the company's file: "[Plaintiff's counsel] reiterates 500k to settle." Doc. 59, Pl.'s Resp. App'x, 84. Additionally, the Hiscox insurance adjuster also noted Hiscox would need to decide whether "[Hiscox] should just provide the $500K to knock this out or to continue litigation up to trial." *Id.* at 73.

Hiscox and the resident-plaintiff ultimately did not settle, and the jury returned a verdict of $3,500,000. Doc. 52, Pl.'s App'x, 125–26. Hiscox timely appealed and secured a supersedeas bond, which included the compensatory damages awarded in the Final Judgment, pre-judgment interest of $51,257.29, estimated court costs of $25,000, and post-judgment interest for the estimated duration of the appeal. *Id.* at 129–30. The parties subsequently settled the case before the appellate court reviewed the decision. *Id.* at 138. It is undisputed that Hiscox paid the policy limit of $1,000,000, and Endurance paid the amount it was required to pay pursuant to the excess insurance policy. *See* Doc. 51 Pl.'s Br. Mot. Summ. J., 3–4; *see* Doc. 54, Def.'s Br. Mot. Summ. J., 5.

Endurance initiated the present litigation, claiming that Hiscox acted unreasonably by not accepting either of the resident-plaintiff's settlement demands of $1,000,000 or $500,000. Doc. 1, Compl., ¶¶ 5.1–5.2. Hiscox contests that it acted reasonably as a matter of law by rejecting the $1,000,000 demand and that the resident-plaintiff never made a settlement demand of $500,000. Doc. 54, Def.'s Br. Mot. Summ. J., 10–11. Endurance also asserts a breach of contract claim against

Hiscox, arguing that Hiscox failed to make supplementary payments pursuant to its insurance policy with Atlantic. Doc. 1, Compl., ¶¶ 6.1–6.4. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). On a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material

facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED R. CIV. P. 56(e)).

## III.

## ANALYSIS

The Court first denies Hiscox's Motion for Leave to Amend its Answer because it failed to demonstrate good cause. The Court then denies Hiscox's Motion for Summary Judgment because fact issues exist as to Endurance's *Stowers* claims. Lastly, the Court denies Endurance's Motion for Summary Judgment on its breach of contract claim because Endurance has not established that it is entitled to recover the supplementary payments under Atlantic's insurance policy.

A.     *Hiscox Has Failed to Demonstrate Good Cause to Amend its Answer.*

Hiscox has moved for leave to amend its Answer to assert two new affirmative defenses: (1) accord and satisfaction; and (2) release. Doc. 61, Mot. Leave, 1–2. Once a scheduling order's deadline to amend the pleadings has passed, parties moving to amend their pleadings must satisfy Federal Rule of Civil Procedure 16(b). *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Rule 16(b)(4) requires the moving party to show "good cause" warrants amending their pleadings. FED. R. CIV. P. 16(b)(4). The Fifth Circuit has interpreted the "good cause" standard to assess four factors: "(1) the explanation of the failure to timely move for leave to

amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., L.L.C.*, 315 F.3d at 535 (internal alterations and quotations omitted). District courts must also "more carefully scrutinize a party's attempt to raise new theories . . . by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier,* 195 F.3d 761, 764 (5th Cir. 1999); *see also Wade v. Cycle Mart, L.P.,* No. A-14-CV-00427-ML, 2015 WL 4404876, at *4 (W.D. Tex. July 17, 2015). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C.*, 315 F.3d at 536.

The deadline for the parties to amend their pleadings was September 27, 2023. Doc. 26, Scheduling Order, 1. Hiscox filed its Motion for Leave to Amend on May 31, 2024, roughly eight months after the deadline had passed. *See* Doc. 61, Mot. Leave. Thus, Rule 16(b) applies. *S&W Enters.*, 315 F.3d at 535. In its Motion, Hiscox only discusses why the Court should grant it leave to amend pursuant to Rule 15 but fails to discuss Rule 16(b) or the good cause standard. *See id.* Courts generally deny untimely motions for leave to amend pleadings when the moving party fails to address Rule 16(b)(4)'s good cause standard. *See, e.g., Milteer v. Navarro Cnty., Texas,* No. 3:21-CV-2941-D, 2022 WL 10613517, at *2 (N.D. Tex. Oct. 18, 2022) (Fitzwater, J.). Thus, Hiscox's failure to address the good cause standard in its Motion is one reason the Court denies the Motion. *See id.*

Alternatively, from the briefing offered, the Court finds no basis for good cause. First, Hiscox fails to provide a sufficient explanation for why it moved for leave to amend eight months after the Scheduling Order's deadline and over three weeks after the parties filed separate motions for summary judgment. "To provide sufficient explanation for failure to timely move for leave to amend,

the moving party . . . must show that, despite his diligence, he could not have reasonably met the scheduling deadline." *Hammond v. United States*, No. 1:21-CV-00686-DAE, 2023 WL 8113860, at *3 (W.D. Tex. June 6, 2023) (citation omitted). Hiscox asserts that the facts underlying this affirmative defense did not materialize until January 16, 2024, which was after the deadline to amend pleadings. Doc. 61, Mot. Leave, 2. While this may be true, Hiscox has offered no explanation for why it then waited over four months after these facts materialized before moving for leave to amend. This falls far short of the diligence necessary to establish good cause. *See Hammond*, 2023 WL 8113860, at *3. Further, Hiscox only sought leave *after* Endurance noted that Hiscox had not asserted these affirmative defenses in its answer. *See* Doc. 58, Pl.'s Resp., 12. Under these circumstances, the Court concludes that the first factor strongly weighs against granting leave to amend.

Second, Hiscox has not sufficiently demonstrated the importance of these affirmative defenses. "Amendments are considered important when they potentially provide additional grounds for [a party] to recover . . . or directly affect a party's prospects of ultimate recovery." *AFS Logistics, LLC v. Tetria Glob. Logistics*, No. 4:21-CV-01086-O, 2022 WL 3904697, at *2 (N.D. Tex. May 11, 2022) (O'Connor, J.) (citations omitted). Hiscox appears to believe it has a full defense against Endurance because Hiscox settled its claims with Atlantic, which held the primary insurance policy. Endurance brings claims seeking to recover payments that Endurance allegedly made to the resident-plaintiff pursuant to its duties as Atlantic's excess insurer. Doc. 1, Compl., ¶¶ 4.14–4.15, 5–6. Atlantic, on the other hand, brought claims against Hiscox to recover payments that Atlantic allegedly made towards the same settlement. Doc. 19, Intervenor Compl., ¶¶ 4.12, 5–6. Thus, Endurance and Atlantic present entirely different theories of recovery in their respective complaints.

Under Texas law, an excess insurer, such as Endurance, can assert certain insurance claims in place of the insured as a subrogee of the insured's rights. *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 483 (Tex. 1992). And under Texas law, the primary insurer can generally assert any defense against the excess insurer as it would be able to assert against its insured. *Id.* However, Hiscox mistakenly believes settling Atlantic's claims means that Hiscox can now extinguish Endurance's claims. It is true that Hiscox could raise these affirmative defenses against Atlantic, if Atlantic filed a new lawsuit against Hiscox with the same claims. Doc. 61, Mot. Leave, 2. But the Court fails to see how Hiscox's proposed affirmative defenses, preventing Atlantic from re-asserting one set of claims, would affect Endurance's "prospects of ultimate recovery" against Hiscox on a completely different set of claims. *See AFS Logistics*, 2022 WL 3904697, at *2. But, even if these amendments were important, the Court would still deny the Motion because of how strongly the other good cause factors weigh against granting leave to amend.

Third, allowing Hiscox to assert new affirmative defenses after each party moved for summary judgment would prejudice Endurance. The Fifth Circuit has noted that granting leave to amend after the opposing party has moved for summary judgment could result in the unfair denial of summary judgment because of a new legal theory the opposing party could not have anticipated. *See Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990). Hiscox argues that Endurance would not be prejudiced because these affirmative defenses present only questions of law that will not require any "discovery or factual investigation." Doc. 61, Mot. Leave, 4. But Endurance has litigated this case without any notice of these two affirmative defenses and allowing Hiscox to amend at this stage would force Endurance to not only exert additional resources such as re-filing an amended motion for summary judgment, but also require Endurance to seriously reconsider its

case strategy. *See Ruiz v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 291 F.R.D. 170, 172 (S.D. Tex. 2013) (finding that a defendant would be prejudiced when a proposed amendment would require the defendant to reconsider its case strategy). For example, Endurance has said it would have deposed Atlantic about what claims it intended to settle with Hiscox had it known of these affirmative defenses earlier, but Endurance cannot do so because discovery is closed. Doc. 70, Pl.'s Resp., 7. Thus, the third factor also weighs against granting leave to amend.

Fourth, this prejudice cannot be cured by a continuance as allowing Hiscox to raise two new affirmative defenses would unnecessarily delay trial and increase litigation costs. Endurance has indicated that if Hiscox was granted leave to amend, Endurance would want to assert new claims against Atlantic and would also want the Court to re-open discovery. Doc. 70, Pl.'s Resp., 7. This case is set for trial on August 5, 2024. Doc. 26, Scheduling Order, 1. Granting Hiscox leave to amend would almost certainly result in additional costly motion practice and delay of the current trial date. *S&W Enterprises*, 315 F.3d at 537; *see also Ruiz*, 291 F.R.D. at 172. Thus, the Court finds that the fourth factor also weighs against granting Hiscox leave to amend.

Accordingly, the Court finds that Hiscox has failed to demonstrate good cause exists to amend its answer and the Court, therefore, denies Hiscox's Motion for Leave to File First Amended Answer (Doc. 61).

B.    *The Court Denies Hiscox's Motion for Summary Judgment Because There is a Genuine Issue of Material Fact That a Reasonable Insurer Would Have Settled the Underlying Case.*

Endurance brings a *Stowers*[2] claim against Hiscox, contending that Hiscox, as the primary insurer, acted unreasonably by failing to accept resident-plaintiff's settlement offers in the underlying

---

[2] *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

case. "[I]nsurers have a common-law duty to exercise ordinary care in the settlement of claims to protect their insureds against judgments in excess of policy limits." *Patterson v. Home State Cnty. Mut. Ins. Co.*, No. 01-12-00365-CV, 2014 WL 1676931, at *7 (Tex. App.—Houston [1st Dist.] Apr. 24, 2014, pet. denied). The elements of a *Stowers* claim are: "(1) the claim against the insured is within the scope of coverage; (2) the demand is within the policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). As Atlantic's excess insurance carrier, Endurance is entitled to assert a *Stowers* claim under a theory of equitable subrogation. *See Am. Centennial Ins.*, 843 S.W.2d at 483. Endurance argues there were two settlement demands in the underlying litigation that gave rise to a *Stowers* duty—one for $1,000,000 and another for $500,000. Doc. 58, Pl.'s Resp., 3. The Court addresses each theory in turn.

> 1. There is a Genuine Issue of Material Fact Regarding Whether a Reasonable Insurer Would Have Accepted the $1,000,000 Settlement Offer.

Hiscox moves for summary judgment on Endurance's first *Stowers* theory by arguing that Endurance can produce no evidence that a reasonably prudent insurer would have accepted the $1,000,000 settlement offer in satisfaction of the third element of a *Stowers* claim. Doc. 54, Def.'s Br. Mot. Summ. J., 10–11. When, as here, the nonmovant bears the burden of proof on a claim at trial, "the moving party may make a proper summary judgment motion [on that claim] . . . with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant properly alleges that the nonmovant lacks evidence on an element of its claim, the burden shifts to the nonmovant to "present[] evidence that provides a genuine issue for trial." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d

636, 644 (5th Cir. 1999). While conclusory allegations "that the nonmovant has no evidence to support his case" are insufficient to shift the burden, allegations "that there is no evidence to support a *specific element* of the nonmovant's claim" suffice. *See Austin*, 864 F.3d at 335 n.10 (emphasis in original).

Endurance has offered evidence that Hiscox did not act as a reasonably prudent insurer in the form of expert testimony. Endurance's expert witness, David Bano, who has worked in the insurance industry for over 35 years, has offered the opinion that an ordinarily prudent insurer would have accepted the $1,000,000 settlement demand. Doc. 59, Pl.'s Resp. App'x, 124, 145. Thus, Endurance has offered evidence sufficient to create a genuine issue of material fact on the third element of a *Stowers* claim. *See Am. Physicians Ins. Exch.*, 876 S.W.2d at 849.

Hiscox also argues that it acted reasonably as a matter of law because in August 2020, after making the $1,000,000 settlement offer, the resident-plaintiff's counsel suggested that the resident-plaintiff would settle for less than $1,000,000. Doc. 54, Def.'s Br. Mot. Summ. J., 10. However, the Court notes that the resident-plaintiff did not make any lower counteroffers at this stage of the settlement negotiations, meaning there was no guarantee that Hiscox would be able to settle the case for less than $1,000,000. *See* Doc. 55, Def.'s App'x, 265. Hiscox has also not explained precisely how it rejected the resident-plaintiff's settlement offer—perhaps Hiscox expressly rejected it after learning the resident-plaintiff was open to settling for less, or perhaps Hiscox simply let the $1,000,000 settlement offer expire on September 14, 2020, without the resident-plaintiff ever making a subsequent offer. These unaddressed facts present a genuine issue of a material fact: reasonable jurors could disagree on whether it was reasonable for Hiscox to reject the $1,000,000 settlement demand simply because Hiscox *believed* that it might be able to settle for a smaller amount without

the resident-plaintiff actually making a lower settlement demand. *See Provident Life & Accident Ins.*, 274 F.3d at 991.

To the extent that Hiscox argues it learned resident-plaintiff might accept a lower settlement offer before it had enough time to accept the $1,000,000 settlement offer, this argument fails. Plaintiff's counsel suggested the resident-plaintiff might accept less than $1,000,000 roughly a week after making the initial settlement offer. Doc. 55, Def.'s App'x, 265. Thus, Hiscox may have had a duty to accept the offer before ever learning the resident-plaintiff would take less.

"[T]he question whether an insurer has had a reasonable amount of time to respond to a *Stowers* demand will generally present a quintessential, constituent fact issue that is subsumed within the jury's application of the reasonably prudent insurer standard." *Bramlett v. Med. Protective Co. of Ft. Wayne, Ind.*, No. 3:10-CV-2048-D, 2013 WL 796725, at *5 (N.D. Tex. Mar. 5, 2013) (Fitzwater, C.J.). Whether Hiscox had enough time to accept this settlement offer before learning that the resident-plaintiff might accept a lower offer, or before the $1,000,000 offer expired, poses a fact question for the jury. *See Am. Ins. v. Assicurazioni Generali*, 228 F.3d 409 at *6 (5th Cir. 2000) (unpublished) (concluding that whether an insurance company acted reasonably in not accepting a settlement offer that was only available for 23 hours was a fact question for the jury to decide).

Accordingly, the Court denies Hiscox's Motion for Summary Judgment as to the $1,000,000 settlement claim.

### 2. There is a Genuine Issue of Material Fact Regarding Whether the Resident-Plaintiff Made a Settlement Demand for $500,000 on March 31, 2021.

Hiscox moves for summary judgment on Endurance's second *Stowers* theory by arguing that, as a matter of law, the resident-plaintiff never formally made a settlement demand for $500,000 in satisfaction of the second element of a *Stowers* claim. Doc. 54, Def.'s Br. Mot. Summ. J., 11–12.

However, the evidence in the record again establishes a genuine issue of material fact: whether a $500,000 settlement demand was ever made.

"[A] *Stowers* settlement demand must propose to release the insured fully in exchange for a stated sum of money." *Am. Physicians Ins. Exch.*, 876 S.W.2d at 848. For the insurer to be subject to a *Stowers* duty, "the settlement's terms must be clear and undisputed." *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 263 (Tex. 2002). However, "a formal settlement demand is not absolutely necessary to hold the insurer liable." *Id.*

Hiscox argues that there was no settlement demand for $500,000 because "there is no evidence of the substantive terms of any alleged demand." Doc. 54, Def.'s Br. Mot. Summ. J., 12. In his first two settlement offers, the resident-plaintiff submitted offers in writing that were labeled "Confidential Settlement Stowers Demand." Doc. 55, Def.'s App'x, 265–66. However, the $500,000 settlement figure came over a phone call and was never reduced to writing. *Id.* Additionally, while the resident-plaintiff's counsel said that $500,000 was the resident-plaintiff's "real number" in settlement discussions on March 31, 2021, defense counsel from the underlying litigation have said there was never a definite offer to settle for this amount. *Id.* at 266, 269.

On the other hand, Endurance points to evidence that suggests the $500,000 figure contained sufficiently clear terms to constitute a settlement demand. For example, the Court notes that the resident-plaintiff's two previous settlement offers contained identical terms other than the amount the resident-plaintiff offered to settle the case. Doc. 55, Def.'s App'x, 272–73, 313–14. Thus, a reasonable jury could conclude that the $500,000 number constituted ongoing settlement negotiations that incorporated the substantive terms from the previous settlement offers. *See Westport Ins. Corp. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. CV H-16-1947, 2018 WL 6313478, at *28–29

(S.D. Tex. Aug. 31, 2018) (concluding a reasonable jury could determine that oral settlement offers contained sufficiently clear terms to trigger the *Stowers* duty), *report and recommendation adopted*, No. CV H-16-1947, 2018 WL 4691239 (S.D. Tex. Sept. 28, 2018).

Additionally, Endurance provides Hiscox's internal records, which suggest that Hiscox could have settled the case for $500,000. For example, Hiscox's internal records said "[resident-plaintiff's counsel] reiterates $500k to settle." *See* Doc. 59, Pl.'s Resp. App'x, 84. In addition, the Hiscox insurance adjuster managing the underlying litigation left a note in the case file questioning whether "[Hiscox] should just provide the $500K to knock this out or to continue litigation up to trial." *Id.* at 73. Thus, Hiscox was under the impression that it could settle the case for $500,000. The Court concludes the competing evidence creates a genuine issue of material fact regarding whether these terms were "clear and undisputed." *See Am. Physicians Ins. Exch.*, 876 S.W.2d at 848. Accordingly, the Court denies Hiscox's Motion for Summary Judgment as to the $500,000 settlement claim.

### 3.   Hiscox Waived the Affirmative Defenses That It Did Not Plead in its Answer.

Hiscox attempts to assert accord and satisfaction in its Motion for Summary Judgment, a purported new affirmative defense that it did not plead in its answer. Doc. 54, Def.'s Br. Mot. Summ. J., 12–13. Having already denied Hiscox's Motion for Leave to File an Amended Answer, the Court must now consider whether Hiscox can assert an affirmative defense it did not raise in its pleadings. An affirmative defense not raised in the pleadings is ordinarily deemed waived. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). However, "[e]ven when a party has failed to assert an affirmative defense in its answer, [a court] may allow it to assert the defense if it is raised at a pragmatically sufficient time and the plaintiff was not prejudiced in its ability to respond." *C&C Inv. Properties, L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016) (citation omitted); *see also Standard*

*Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010) (finding that a defendant did not waive an affirmative defense it failed to plead because it asserted the affirmative defense in the parties' joint status report and in denial letters sent to the plaintiff). Here, Hiscox did not assert this affirmative defense until it moved for summary judgment, and there is nothing to suggest that Endurance was put on notice of this defense at any earlier point in litigation. *See* Doc. 54, Def.'s Br. Mot. Summ. J., 13 n.39. Thus, the Court finds that Hiscox did not raise these defenses at "a pragmatically sufficient time" and that Endurance would be prejudiced if the Court now allowed Hiscox to assert these defenses. *See Standard Waste*, 612 F.3d at 398. Accordingly, the Court rejects Hiscox's Motion for Partial Summary Judgment as to Endurance's *Stowers* claim.

C.      *The Court Denies Endurance's Motion for Summary Judgment Because There is a Genuine Issue of Material Fact Regarding Whether Endurance is Entitled to Recover Pre-Judgment Interest, Post-Judgment Interest, and the Court Costs from the Underlying Litigation.*

Endurance has moved for summary judgment on its claims that Hiscox breached its contract with Atlantic by failing to make certain additional payments as outlined by the primary insurance policy. Doc. 50, Pl.'s Mot. Summ. J., 1–2. Specifically, Endurance argues that Hiscox is required to pay Endurance court costs, pre-judgment interest, and post-judgment interest ("Supplementary Payments") on the final judgment from the underlying case pursuant to Atlantic's primary insurance policy with Hiscox. Doc. 51, Pl.'s Br. Mot. Summ. J., 2. The Court concludes that Endurance has failed to establish its right to subrogation of the Supplementary Payments under Atlantic's insurance policy.

"An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed." *In re Farmers Texas Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 270 (Tex. 2021) (citation omitted). Under Texas law, "[t]he elements of a breach of

contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (citation omitted). To assert a breach of contract claim, the plaintiff ordinarily must establish its privity to the agreement or that it is a third-party beneficiary to the agreement. *See Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.). However, a plaintiff may assert a breach of contract claim under a theory of contractual subrogation, which is "created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007).

Endurance has failed to establish as a matter of law that the excess insurance policy's subrogation provision grants Endurance the right to recover Supplementary Payments, meaning that there is an unresolved question regarding whether Endurance may assert this breach of contract claim against Hiscox. Atlantic's insurance policy with Hiscox included the following "Defense and supplementary payments" provision:

> With respect to any claim against [Atlantic] that [Hiscox] investigate[s], defend[s], or settle[s], [Hiscox] will pay:
> . . .
> 5. court costs taxed against you in the claim; however, costs do not include attorney fees or expenses;
> 6. prejudgment interest awarded against you on that part of any judgment we pay. If we make an offer to pay the applicable limit, we will not pay any prejudgment interest based on the period of time after the offer; and
> 7. interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in the court the part of the judgment that is within the applicable limit.

Doc. 52, Pl.'s App'x, 14–15 (emphasis omitted).

-16-

Atlantic has since transferred to Endurance some of Atlantic's rights of recovery in the parties' excess liability insurance policy: "If [Atlantic] has rights to recover all or part of any payment [Endurance has] made under this policy, then those rights are transferred to [Endurance] and [Atlantic] must do nothing to impair those rights." *Id.* at 100. Endurance is only entitled to subrogate Atlantic's right to the Supplementary Payments if Endurance actually made those payments on Atlantic's behalf to the resident-plaintiff.[3] *See id.*; *see Mid-Continent Ins.*, 236 S.W.3d at 774. If, however, Endurance did not make these payments to the resident-plaintiff, the excess policy's subrogation provision does not permit Endurance to recover the Supplementary Payments. Endurance has not introduced *any* evidence proving that it paid pre-judgment interest, post-judgment interest, or court costs to the resident-plaintiff as necessary to establish Atlantic transferred its right to recover the Supplementary Payments to Endurance.

With regards to pre-judgment and post-judgment interest, Endurance only presents arguments establishing why Hiscox is required to pay these figures pursuant to Hiscox's insurance policy with Atlantic. *See generally* Doc. 51, Pl.'s Br. Mot. Summ. J.; *see generally* Doc. 73, Pl.'s Reply Mot. Summ. J. But without any evidence that Endurance made these payments to the resident-plaintiff following the final judgment, the Court cannot conclude that the subrogation provision applies to pre-judgment interest and post-judgment interest.

With regards to court costs, Endurance has only presented evidence of the resident-plaintiff's estimated court costs without introducing any evidence that Endurance actually paid any court costs. Introducing a supersedeas bond that estimated $25,000 in court costs as well as an email from its

---

[3] Endurance asserts that it brings both "contractual and equitable subrogation claims against Hiscox." Doc. 51, Pl.'s Br. Mot. Summ. J., 4. While not entirely clear from Endurance's briefing, the Court assumes that Endurance's claims to recover the Supplementary Payments are only brought pursuant to a contractual subrogation theory and that its *Stowers* claim is brought pursuant to an equitable subrogation theory.

appellate counsel recommending Endurance set aside $25,000 for court costs does not establish that Endurance paid the resident-plaintiff's court costs. *See* Doc. 73, Pl.'s Reply, 7–8 (citing Doc. 52, Pl.'s App'x, 130, 134). Without any evidence proving Endurance paid the court costs, the Court cannot conclude that the subrogation provision allows Endurance to recover the resident-plaintiff's court costs. Accordingly, the Court denies Endurance's Motion for Summary Judgment.

## V.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Hiscox's Motion for Summary Judgment (Doc. 53), **DENIES** Hiscox's Motion for Leave to File an Amended Answer (Doc. 61), and **DENIES** Endurance's Motion for Summary Judgment (Doc. 50). Endurance's *Stowers* claim and breach of contract claims must be resolved at trial.

SO ORDERED.

SIGNED: July 31, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE